# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

United States of America,

      Plaintiff,

v.

John Robert Strom,

      Defendant.

Criminal No. 07-362 (JRT/JJG)

**REPORT
AND
RECOMMENDATION**

---

The above-entitled matter came before the undersigned on January 8, 2008 for resolution of pretrial motions. Leshia M. Lee-Dixon, Assistant U.S. Attorney, appeared on behalf of the Government. Deborah K. Ellis, Esq., appeared on behalf of defendant John Strom.

Mr. Strom (Strom) has two dispositive motions. By a motion to suppress evidence (Doc. No. 10), Mr. Strom (Strom) challenges his detention and subsequent arrest. He argues that, when he was initially detained, there was no reasonable, articulable suspicion for a valid investigatory stop; and that his subsequent arrest was not supported by probable cause. Mr. Strom also has a motion to suppress statements (Doc. No. 12), but as there are no issues raised by this motion, it is denied as moot. The motions are referred to this Court for a report and recommendation under 28 U.S.C. § 636 and Local Rule 72.1(b).

## I.    BACKGROUND

The entire record for this motion consists of testimony by Officer Brady Madson of the Coon Rapids Police Department. Madson, in uniform and driving a marked squad, received a dispatch on the evening of September 12, 2007. According to the dispatcher, an officer from the

Minneapolis Police Department required assistance in a narcotics investigation, indicating that the officer wanted to interview the driver of a green pickup truck at a specified gas station.

The dispatcher did not provide a description of the driver, or any other details about why the officer from the Minneapolis Police Department wanted to speak to the driver. Madson went to the gas station and saw a man pumping gas into a green truck. There were no other persons in or around the truck.

Madson parked his squad directly behind the truck, stepped out of the squad, and directed the man to come to him. When Madson made this statement, he had his hand on his gun, which remained in its holster. The man did not immediately comply, briefly turning toward the truck as if to go inside, but then walked toward Madson. During this interaction, Madson thought that the man looked fidgety and nervous.

Based on this behavior, and because Madson understood that the man was a suspect in a narcotics investigation, Madson believed that the man might be armed. He proceeded with a pat-down search and felt a hard object in the man's pocket. Madson checked the pocket and found a pouch holding a glass pipe and a small quantity of what appeared to be an illegal drug. At some point during or after the search, the man identified himself as John Strom, the defendant in this matter.

Madson placed Strom in the back of the squad and advised dispatch that the driver of the green truck was detained. Approximately ten minutes later, officers from the Minneapolis Police Department arrived and took Strom into custody.

## II.    ANALYSIS

### A.    Seizure

The Fourth Amendment generally requires that officers obtain a warrant before seizing a person, subject to limited exceptions.  *United States v. Bynum*, 508 F.3d 1134, 1136 (8th Cir. 2007).  As a threshold matter, the parties dispute whether Strom was seized and thus whether the protections of the Fourth Amendment attached.

For the purposes of the Fourth Amendment, a seizure occurs when an officer restrains an individual's liberty, either by physical force or by show of authority.  To decide whether a person is seized, a court looks at whether a reasonable person, in circumstances comparable to those faced by the defendant, would not feel free to leave.  *United States v. Vera*, 457 F.3d 831, 834-35 (8th Cir. 2006).

In examining whether a person would feel free to leave, relevant factors may include how the officer is positioned relative the person, whether the officer displays a weapon, and whether the officer uses language that indicates compliance is necessary.  *United States v. Johnson*, 326 F.3d 1018, 1021-22 (8th Cir. 2003).

The record shows that Madson, in uniform, pulled his marked squad up directly behind the truck.  He exited the squad, and with his hand on his gun, directed Strom to approach.  Faced with a comparable display of authority, a reasonable person would not feel free to leave.  This Court concludes, therefore, that Strom was seized.

### B.    Investigatory Stop

The analysis then turns to whether his seizure is justified, under the Fourth Amendment, pursuant to one of the warrant exceptions.  The relevant exception here is the investigatory stop, which permits officers to briefly detain a suspect based on reasonable, articulable suspicion.  *See*

*United States v. Davis*, 457 F.3d 817, 822 (8th Cir. 2006). Because an exception to the warrant requirement is involved, the Government has the burden to show the seizure was lawful. *United States v. Kennedy*, 427 F.3d 1136, 1140 (8th Cir. 2005).

To decide whether reasonable, suspicion is present, a court examines whether particular facts supply objective reasons for the stop. This assessment may include observations an officer makes as a result of experience and training. *United States v. Davis*, 457 F.3d 817, 822 (8th Cir. 2006).

On the issue of whether reasonable, articulable suspicion is present here, the parties focus their arguments on the collective knowledge doctrine. Where an officer lacks objective facts that will justify an investigatory stop, but that officer is working with other officers who do, then the knowledge of the others is imputed to the officer who executed the stop. All that is necessary, for the doctrine to apply, is some degree of communication between the officers. *United States v. Gillette*, 245 F.3d 1032, 1034 (8th Cir. 2001).

The record here shows that, before Strom was stopped, Madson was communicating with officers from the Minneapolis Police Department. From these communications, Madson learned that Strom was wanted in connection with a narcotics investigation. Madson was not informed, however, whether Strom had committed a crime. Assuming the Minneapolis Police Department did have reasonable, articulable suspicion that Strom committed a crime, the objective facts that form the basis for this suspicion are not part of the record here.

Madson lacked reasonable, articulable suspicion that Strom had committed a crime, and therefore, Madson did not have cause to initiate an investigatory stop on his own. But Madson communicated with other officers, and therefore, the knowledge of other officers is imputed to him under the collective knowledge doctrine. This doctrine, however, does not remedy the lack

of reasonable, articulable suspicion here.  The record has no information regarding what other officers knew, and thus there is insufficient proof they had cause for an investigatory stop either.

In other cases where the Government has invoked the collective knowledge doctrine, the record is replete with information showing what other officers knew.  *See, e.g., United States v. Williams*, 429 F.3d 767, 769 (8th Cir. 2005); *United States v. Ortiz-Monroy*, 332 F.3d 525, 529 (8th Cir. 2003); *United States v. O'Connell*, 841 F.2d 1408, 1418-19 (8th Cir. 1988).  Because there is no comparable showing here, it is not possible for this Court to find that the investigatory stop of Strom was supported by reasonable, articulable suspicion.  Evidence seized after the stop, therefore, is appropriately suppressed.

The circumstances in this matter, moreover, are perhaps better examined under a rule set out by the U.S. Supreme Court in *United States v. Hensley*.  469 U.S. 221 (1985).  In that case, the Court ruled that it was reasonable for officers to rely on a dispatch when deciding whether to commence an investigatory stop.  To determine whether evidence from the stop is admissible, however, the Government must show that the officers requesting the dispatch had reasonable, articulable suspicion for doing so.  *See id.* at 232.

The record lacks any evidence about what was known by the officers of the Minneapolis Police Department who requested the dispatch here.  Although Madson could reasonably rely on the dispatch, the lawfulness of his stop depends upon the knowledge of the other officers.  There being no evidence about their knowledge, the rule of *Hensley* requires suppression of evidence from the stop.

Because the legality of the initial stop is not established, evidence that was later obtained as a result of the stop must also be suppressed.  *See United States v. Sanders*, 510 F.3d 788, 789 (8th Cir. 2007).  And there is no intervening event, such as consent or some other act of free will

by Strom,[1] which would purge the taint of this violation.  To the contrary, the remainder of the encounter was controlled by Madson.  *See, e.g., United States v. Grajeda*, 497 F.3d 879, 882-83 (8th Cir. 2007).  This Court accordingly concludes that it is appropriate to grant Strom's motion to suppress.

## III.     RECOMMENDATION

Being duly advised of all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT:**

1.     Strom's motion to suppress evidence (Doc. No. 10) be **GRANTED.**

2.     Strom's motion to suppress statements (Doc. No. 12) be **DENIED AS MOOT.**

Dated this 8th day of February, 2008.

s/ *Jeanne J. Graham*
JEANNE J. GRAHAM
United States Magistrate Judge

## NOTICE

Pursuant to Local Rule 72.2(b), any party may object to this report and recommendation by filing and serving specific, written objections by **February 21, 2008**.  A party may respond to the objections within ten days after service thereof.  Any objections or responses filed under this rule shall not exceed 3,500 words.  The district court judge shall make a de novo determination of those portions to which objection is made.  Failure to comply with this procedure shall forfeit review in the United States Court of Appeals for the Eighth Circuit.  Unless the parties are prepared to stipulate that the  District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve objections made to this report and recommendation, the party making the objections shall timely order and cause to be filed within ten days a complete transcript of the hearing.

---

[1] This Court also notes that Madson lacked authority to conduct the pat-down search, for reasons similar to those that undermine the investigatory stop.  To undertake an investigatory frisk, an officer must have reasonable, articulable suspicion that a person is armed and dangerous.  *United States v. Garcia*, 441 F.3d 596, 599 (8th Cir. 2006).  Consistent with the analysis beforehand, there is no evidence that Strom committed a crime, much less a drug trafficking crime. And his nervous behavior may be expected of any person who has been stopped by police, which by itself is not enough to support an objective suspicion that he was armed.  *Cf. United States v. Gray*, 213 F.3d 998, 1000 (8th Cir. 2000) (concluding that defendant's ordinary conduct during consensual police encounter did not justify investigatory frisk).